UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA : | Criminal No. 08-775 (FSH) |
| v. : | **OPINION & ORDER** |
| SADIQ CALLOWAY : | Date: May 31, 2012 |

**HOCHBERG, District Judge;**

This matter comes before the Court to determine whether Defendant Sadiq Calloway is competent to proceed to sentencing. This Court held a hearing on May 8, 2012 at which both sides were afforded the opportunity present any evidence and argument that they wished to present. The Court also conducted a colloquy with respect to whether defense counsel would continue his representation of the defendant following the competency hearing.

**I.     BACKGROUND**

On July 16, 2009, following a jury trial, Defendant was convicted of possession of a controlled substance with intent to distribute, possession of a firearm in furtherance of the crime, and possession of a firearm after having been convicted of a felony. Prior to sentencing, Defendant wrote to the Court that he had serious mental illness and that his trial counsel had not notified the Court about these issues. Specifically, Defendant wrote a letter dated July 23, 2009 in which he claimed that his court-appointed trial counsel failed to inform the Court that he had been diagnosed with "Schizophrenic paranoia" in 2006. Defendant also informed the Court that he was filing an ethics complaint against his trial counsel.

The Court then appointed a second CJA counsel, Stacy A. Biancamano, Esq., to represent Defendant. Ms. Biancamano is a highly experienced criminal defense attorney who had a successful and long tenure in the Office of the Public Defender prior to entering private law practice in a fine firm; she is admired both for her interpersonal skills and for her legal skills, and she is a highly empathetic and patient person. The Court also ordered that Defendant undergo a psychological evaluation at the Bureau of Prisons' ("BOP") Metropolitan Correctional Center ("MCC") in New York.

Following this evaluation by the MCC's Dr. William J. Ryan, Defendant was evaluated by Dr. Catherine M. Barber, an independent expert chosen by defense counsel, and then by Dr. John S. O'Brien II, an independent expert chosen by the government. Following these evaluations, which resulted in conflicting and inconclusive findings as to Defendant's competency to be sentenced, the Court ordered, pursuant to 18 U.S.C. § 4241(d), that Defendant be placed in the custody of the Attorney General for the purpose of receiving the care and treatment necessary to determine whether he would have the capacity to proceed to sentencing. Defendant was then committed to the BOP's Federal Medical Center at Butner, North Carolina ("FMC Butner") where he was evaluated by Dr. Jill R. Grant and Dr. Bruce Berger. The FMC Butner Forensic Evaluation by Drs. Grant and Berger and a Certificate of Restoration of Competency were filed with this Court on January 17, 2012.

In the FMC Butner Forensic Evaluation, Drs. Grant and Berger concluded:

> [I]t is our opinion that Mr. Calloway is competent to be sentenced. He has an adequate factual and rational understanding of his charges and possible outcomes in his case. Psychological test results and behavioral observations indicate he has an adequate cognitive level to understand the charges against him and related legal proceedings. Monitored telephone calls and behavioral observations over a lengthy evaluation period indicate he has an ability to assist his attorney in the preparation of his defense if he chooses to do so. Although largely uncooperative,

>he has demonstrated an adequate understanding of the various facets related to his case and the possible outcomes.

FMC Butner Forensic Evaluation, Docket No. 73, Joint Exhibit 1 ("FMC Butner Report"), at 23.

The FMC Butner Report noted that on his monitored telephone calls, "Mr. Calloway consistently exhibited clear, organized, and goal-oriented speech," and that "[a]t no point during the evaluation did Mr. Calloway exhibit typical symptoms of a psychotic or mood disorder." *Id.* at 16. Because his communications differed markedly when he was being directly evaluated by psychologists as compared with his lucid and goal-directed private telephone calls, the question of possible malingering was a consideration.[1] Therefore, while at FMC Butner, Calloway underwent a Test a Memory Malingering ("TOMM") on which he received scores of 20, 22, and 22 on three trials. According to the report, "[t]ypically, scores on the second trial of this test are very high for non-malingerers, regardless of age, neurological dysfunction, or psychological symptoms" and "[a]ny score lower than 45 on the second trial or retention trial should raise concern that an individual is not putting forth maximum effort and is likely malingering." *Id.* at 19. Defendant's TOMM results were found to be "consistent with exaggerated memory impairment." *Id.* The FMC Butner Report also concluded that "[i]n consideration of behavioral inconsistencies, inconsistency between self-report and behavior, exaggerated and atypical symptom presentation, test results, and historical information, it appears Mr. Calloway most closely meets criteria for the condition of malingering." *Id.* at 21.

Mr. Calloway's communications with his second court-appointed counsel fared poorly as well, and despite exceptionally patient efforts on Ms. Biancamano's part to faithfully and diligently represent the defendant, she moved to withdraw as counsel. On December 30, 2011, the Court granted Ms. Biancamano's motion to withdraw as counsel following: (1) Defendant's

---

[1] Prior examinations had also raised the issue of malingering, without reaching a definitive conclusion.

letter to the Court stating that Ms. Biancamano "refused to assist [him] in filing motions in defense of [his] constitutional rights violations," and "[i]nstead . . . attempted to re-instate [his] original plea of 120 months maximum," Defendant's May 26, 2011 letter, Docket No. 63; and (2) Ms. Biancamano's certification that she was receiving threatening and hostile phone calls from Defendant despite several attempts to explain the legal steps she was taking in his defense and that "the attorney-client relationship has deteriorated to such an extent that effective communication and representation is no longer possible." November 7, 2011 Certification of Stacy A. Biancamano, Docket No. 67, ¶¶ 12-14.

On December 30, 2011, the Court appointed Timothy R. Anderson, Esq. as Defendant's new CJA counsel. Mr. Anderson is likewise an extremely calm and caring defense attorney, in addition to being of high skill as an attorney. After another 3 months, Mr. Anderson informed the Court by letter dated March 16, 2012 that Defendant wanted a new attorney appointed to replace him. According to Mr. Anderson, Defendant no longer trusted him and thought that Mr. Anderson was "out to get" Defendant. However, Mr. Anderson indicated that he was still ready and willing to represent Defendant at his competency hearing and beyond.

At the May 8, 2012 hearing, the Court addressed both Defendant's request that his appointed counsel be replaced and Defendant's competency pursuant to 18 U.S.C. § 4241. The Court engaged in a short colloquy with Mr. Calloway, after Mr. Anderson reported to the Court that his communications with Mr. Calloway had been quite good during the weeks prior to the hearing, and that he thought that Mr. Calloway no longer wised to replace him as counsel, having spoken to him about it just prior to the hearing. When the Court engaged Mr. Calloway in a colloquy to confirm the communications he has just had with Mr. Anderson in the lock-up prior to the hearing, Mr. Calloway again changed his tune once he was on the record. The Court

4

denied the request to replace Mr. Anderson as CJA counsel and reserved decision on the issue of Defendant's competency.

## II. DISCUSSION

### A. Substitution of Counsel

18 U.S.C. § 3006A provides that "The United States magistrate judge or the court may, in the interests of justice, substitute one appointed counsel for another at any stage of the proceedings." "As its name betrays, the 'interests of justice' standard contemplates a particularly context-specific inquiry." *Martel v. Clair*, 132 S.Ct. 1276, 1287 (2012). The factors to be considered generally include "the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Id.* (citing *United States v. Welty*, 674 F.2d 185, 188 (3d Cir. 1982)).

At the May 8, 2012 hearing, before denying Defendant's request, this Court probed why Defendant was once again stating unhappiness with his lawyer, when a mere 30 minutes earlier (while not in Court) he had indicated to his lawyer that he was communicating well with him and did not want a new lawyer. The Court questioned both the Defendant and Mr. Anderson. As stated above, Mr. Anderson informed the Court that his communication with Defendant had improved and he expected that Defendant would withdraw the request for substitution of counsel. Mr. Anderson stated that he and Defendant had what he considered to be a clear and fruitful discussion that very morning. When the Court turned its questioning to the Defendant, however, he visibly surprised and astonished Mr. Anderson by stating that he wished for new counsel based on his belief that Mr. Anderson had lied to him and that he could no longer trust

Mr. Anderson. Mr. Anderson's face registered complete amazement at the contradiction between what Mr. Calloway had stated in their private talks in the holding cell and his statements on the record in court, again suggesting a deliberate manipulative and strategic choice as to what to make himself appear to be when undergoing evaluation or answering the Court's questions. When the accusation of purported "lies" was probed, it became clear that it had to do with the legal strategy that they would employ for possible post-trial motions, a matter that can often be fraught with frank and difficult discussions between lawyer and client about the strength of a particular argument that a client may wish to press.

  The Court does not find that Mr. Anderson lied to Defendant nor does it find that there has been an irreconcilable breakdown in communication between Defendant and Mr. Anderson. Defendant's statements, rather than demonstrating any failure to communicate, merely indicate a difference of opinion between client and counsel regarding legal strategy in seeking a new trial and the Defendant's continued pattern of strategic uncooperative behavior. The alleged "lie" regarding the significance of trial counsel's misstatement during his closing pertains to legal interpretation of a part of the trial summation. The fact that Mr. Anderson and Defendant are discussing the legal issues underlying a potential motion for a new trial clearly indicates the existence of effective communication between them. The decision as to how to present post-trial motions is not yet before the Court, because they have not yet been filed due to the extraordinary delay caused by all of the psychological evaluations of the defendant. Throughout the proceeding, even when being attacked, Mr. Anderson has demonstrated himself to be a highly

qualified, diligent, and compassionate defense attorney in both this matter and others in which he has appeared before this Court.[2]

Given Mr. Anderson's representations to this Court regarding the recent effective communication he has had with Defendant and given Defendant's statements, which—while indicating a difference of opinion—do not demonstrate a breakdown in communication; the Court does not find that the interests of justice would be served by a substitution of counsel at this time. This conclusion is further buttressed by the shock observed on Mr. Anderson's face when Defendant stated that he did not trust Mr. Anderson and wanted new counsel, which supports Mr. Anderson's position that effective communication had in fact been restored. As explained at the hearing, now that the competency hearing has been completed, Defendant is free to proceed *pro se* as the case goes forward. If he indicates that he wishes to do so, the Court will conduct the appropriate colloquy with him at that time.

### B. Defendant's Competency

Based on the FMC Butner Certificate of Restoration to Competency, this Court held a hearing to determine whether "by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense." 18 U.S.C. § 4241(e). At a competency hearing, the government bears the burden of proof. *United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1989). The defendant at such a hearing "shall be represented by counsel and . . . shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 18 U.S.C. § 4247(d).

---

[2] The Court also finds that Defendant's previous CJA counsel, Stacy A. Biancamano, is an effective and highly competent defense attorney whom this Court will not hesitate to appoint in future matters.

At the competency hearing, Defendant opted not to testify, present evidence, or subpoena witnesses. Rather, Defendant decided to submit the issue of his competency to the Court based on the FMC Butner Forensic Evaluation and the prior psychological evaluations, stating on the record that the defense expert psychologist found nothing in the FMC Butner evaluation that was unsubstantiated and nothing to contest. The government also chose not to call any witnesses, relying instead on the FMC Butner report. This Court has reviewed in detail the FMC Butner Forensic Evaluation as well the reports of MCC, Dr. Barber, and Dr. O'Brien. While Dr. Barber, Defendant's independent expert, originally opined that Defendant was incompetent, *see* Joint Exhibits 1A and 1D, Defendant stated that after reviewing the FMC Butner evaluation, she was "unable to refute its conclusions." April 25, 2012 Letter from Mr. Anderson, Docket No. 84; May 8, 2012 Transcript at 18:5-20 and 28:12-29:1.

Neither side challenges the findings of the FMC Butner Forensic Evaluation, which concludes that Defendant is likely malingering, likely fabricating his psychological problems and is competent to proceed to sentencing, After reviewing all of the psychological evaluations of Defendant, the Court accepts the conclusions of the FMC Butner report and finds by a preponderance of the evidence that Defendant is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense if he chooses to be cooperative and is, therefore, competent to proceed to sentencing. A choice to be uncooperative and make oneself appear to be incompetent is not actual incompetence.

### III.  CONCLUSION & ORDER

For the reasons stated above;

**IT IS** on this 31st day of May 2012,

**ORDERED** Defendant's request for substitution of appointed counsel is **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant is competent to proceed to sentencing; and

**IT IS FURTHER ORDERED** that Defendant may file a motion for a new trial by **June 18, 2012**, the government may respond by **July 9, 2012**, and a reply may be filed not later than **July 14, 2012**.

/s/ Faith S. Hochberg_____
Hon. Faith S. Hochberg, U.S.D.J.
